## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAN BOGER on behalf of himself and    :
others similarly situated,    :
   :
     Plaintiff    :
   :
v.    :    Case No.
   :
   :
MARIAM, INC. dba    :
DARCARS AUTOMOTIVE GROUP    :
   :
and    :

FRESH BEGINNINGS, INC. dba
ELEAD1ONE

     Defendants
_____/

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.     Plaintiff Dan Boger ("Mr. Boger") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     In violation of the TCPA, MARIAM, INC., doing business as DARCARS Automotive Group ("DARCARS"), hired the co-defendant, FRESH BEGINNINGS, INC. doing business as ELEAD1ONE, who made telemarketing calls to a cellular telephone number of Mr. Boger for the purposes of advertising their goods and services, using an automated dialing system, which is prohibited by the TCPA.

3.      ELEAD1ONE made these calls because of an agreement with DARCARS, who hired ELEAD1ONE to generate business through telemarketing, and directed them on how to do so, including providing the telephone numbers to ELEAD1ONE.

4.      The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

5.      A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

6.      Plaintiff Dan Boger is a resident of the state of Maryland and this District.

7.      Defendant DARCARS is a corporation with its headquarters in this District.

8.      Defendant ELEAD1ONE is a company that is headquartered in Georgia, and conducts business in this District.

### Jurisdiction & Venue

9.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims were made into this District.

### The Telephone Consumer Protection Act

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

16.     DARCARS is one of the nation's leading automotive dealerships with locations in Maryland, Virginia, Washington, D.C., and Florida.

17.     To generate business through sales, DARCARS relies on telemarketing.

18.     One of DARCARS's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

19.     However, DARCARS does not make the calls themselves, instead they rely on companies such as ELEADS1ONE.

20.     DARCARS does this so they do not incur the expense and spend the time generating their own telemarketing leads.

21.     As such, the burden and inconvenience of unwanted calls is shifted from DARCARS to the public, and the putative class of individuals that the Plaintiff seeks to represent.

22.     ELEADS1ONE is a call center that is hired by its clients to place automated telemarketing calls.

23.     ELEADS1ONE advertises that it makes "Outbound Sales" calls at its call center for its clients.

24.     One of these clients was DARCARS.

25.     ELEADS1ONE advertises that its call center has made more than 52,000,000 calls.

Call to Mr. Boger

26.     Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

27.     Mr. Boger's telephone number, (703) 328-XXXX, is assigned to a cellular telephone service.

28.     That telephone number has been on the National Do Not Call Registry for more than five years.

29.     Due to the contract with DARCARS, ELEADS1ONE made at least two automated telemarketing calls to the Plaintiff, including one on March 14, 2017.

30.     When the call was answered, there was a lengthy pause and a click, which indicated to the Plaintiff that the call was made using an ATDS.

31.     Further indicating that the call was made using an ATDS was the (1) geographic location between the Plaintiff and the calling party, (2) the generic and scripted telemarketing pitch that are made on the calls and (3) the advertisements and representations as ELEADS1ONE to the public about their calling center activities, discussed above.

32.     All of these factors support that the calls were made *en masse*, using automated equipment.

33.     Following the lengthy pause and extended silence, ELEADS1ONE gathered

generic information about Mr. Boger to see if he would meet parameters supplied by

DARCARS.

34.     The Caller ID for the phone number that called Mr. Boger was 813-444-5431.

35.     That Caller ID, which, upon information and belief, is exclusive to

ELEADS1ONE has been the subject of a number of complaints for their telemarketing activity:

> This is ELEAD CRM / ELEAD1ONE at elead-crm.com. They claim they are calling on behalf of an auto dealership. I don't provide consent to companies to call my cell phone. I believe they use an auto dialer, since I (and many others) experience nobody on the other end of the line.
>
> --- JH
>
> Cold- Calling Scam!! A sweet souther woman by the name of Melissa called me. She verified my own car to me - mileage and everything. When I told her I didn't know who she was therefore I wouldnt be giving her any info -she stated she was from my local dealership (gave actual name and town) and was calling on behalf of the manager Joe (who I personally know) and wanted to know if I was interested in trading in my used car and upgrading. Melissa said that they are looking for good, used & demand cars and we're willing to offer a pay out for it. I called my dealership and they said beware- it's a scam!!
>
> -- HB
>
> Its some type of vehicle dealership using an internet dialer.
>
> -- Boo

*See* https://www.shouldianswer.com/phone-number/8134445431 (Last Visited March 31, 2017).

36.     Plaintiff and the other call recipients were harmed by these calls. They were

temporarily deprived of legitimate use of their phones because the phone line was tied up, they

were charged for the calls and their privacy was improperly invaded.

37.     Moreover, these calls injured Plaintiff and other class members because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the putative class.

DARCARS's Liability and its Arrangement with ELEADS1ONE

38.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

39.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

40.     In that ruling, the FCC instructed that sellers such as DARCARS may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

41.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

42.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

43.     DARCARS is directly liable for the ELEADS1ONE telemarketing calls because it actively participated in those calls through guidelines it directed ELEADS1ONE to follow.

44.     DARCARS is also directly liable because it provided the telephone numbers for ELEADS1ONE to call.

45.     DARCARS maintains interim control over its ELEADS1ONE's actions as to telemarketing and other activities by directing the content of their agents' advertising as well as dictating the parameters for potential prospects that they would accept.

46.     By engaging ELEADS1ONE to make calls on behalf of its agents to generate new business, DARCARS "manifest[ed] assent to another person . . . that the agent shall act on the

principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

47.     Similarly, by commissioning these automated calls, ELEADS1ONE "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of DARCARS, as described in the Restatement (Third) of Agency.  As a result, ELEADS1ONE is an agent of DARCARS.

48.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

49.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

50.     The class of persons Plaintiff proposes to represent are tentatively defined as:

> All persons within the United States: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

51.     Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

52.     The class as defined above is identifiable through phone records and phone number databases.

53.     The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

54.     Plaintiff is a member of the proposed class.

55.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

   a.     Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

   b.     Whether Defendants placed calls using an automatic telephone dialing system;

   c.     Whether DARCARS is vicariously liable for the conduct of ELEADS1ONE;

   d.     Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

   e.     Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

56.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by the defendants and are based on the same legal and remedial theories.

57.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the

class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

59.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

60.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

61.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling provisions

62.     Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

63.     The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

64.     As a result of the Defendants violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "knowing or willful". *Id.*

65.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Defendants' actions complained of herein violate the TCPA;

E.     An order enjoining Defendants from making automated or pre-recorded calls;

F.     An award to Plaintiff and the Class of damages, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By its attorneys

/s/_____
**Stephen H. Ring**
**Stephen H. Ring, P.C.**
**9901 Belward Campus Drive, Suite 175**
**Rockville, MD 20850**
**Telephone: 301-563-9249**
**Facsimile: 301-563-9249**
**Email: shr@ringlaw.us**

Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High Street, Suite 304
Boston, MA 02110
Telephone: (508) 221-1510
Facsimile: (617) 830-0327
ted@broderick-law.com
Subject to *Pro Hac Vice* admission

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
mccue@massattorneys.net
Subject to *Pro Hac Vice* admission